# Hestonville, Mantua, and Fairmount Passenger Railroad Company *versus* Kelley.

1. In an action to recover damages for an injury caused by alleged negligence of defendant's servant, where such alleged negligence consists of the omission of a duty suddenly and unexpectedly arising, it is incumbent on the plaintiff to show that the circumstances were such that the servant had an opportunity to become conscious of the facts giving rise to such duty and a reasonable opportunity to perform it.

2. As a passenger car, moving slowly, after dark, was approaching a switch, two boys, aged seven and ten years respectively, approached the car, and the driver requested or consented that the elder one should turn the switch. The elder boy then jumped on the front platform, followed by the younger boy. The former crossed the platform, jumped off the other side, ran ahead and turned the switch. The younger boy remained on the platform for about thirty seconds or less, during which time the driver was leaning forward devoting his attention to looking if the switch was right. As soon as the car entered the switch the driver turned to see the younger boy, who had, however, an instant before, jumped off after his hat which was blown off; in so doing he fell on the track and

[Hestonville, &c. R. R. Co. *v.* Kelley.]

was immediately struck by the wheels and fatally injured. In an action by his parents against the company, to recover damages :

*Held*, that under these circumstances there was no evidence of negligence on the part of the driver, and that the court should therefore have directed a verdict for the defendant.

January 12th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 4, of *Philadelphia county :* Of July Term 1882, No. 76.

Case, by Patrick Kelley and Mary his wife, against the Hestonville, Mantua and Fairmount Passenger Railway Company, to recover damages for the death of their son, a boy of seven years of age, caused by the alleged negligence of defendants' servant.

On the trial, before THAYER, P. J., the evidence showed the following to be the facts :—On the evening of September 26th 1880, about 7 o'clock, it being dark, a car of defendants' line was approaching a switch near the terminus of the road on Belmont avenue, the driver put on the brake and slowed up the car; at this moment two or three boys approached the car when the driver asked one of them to turn the switch, or one of the boys said he would turn the switch and the driver said, go ahead. The eldest boy, ten years of age, jumped on the front platform, which was unenclosed, passed behind the driver, took up the switch iron, jumped off the other side, and ran a short distance up the track to the switch. This distance was about one-fourth of a block. The other boy, seven years of age, followed his companion on to the front platform ; the driver leaned forward over the dasher, looking to see that the switch was right, the car proceeding slowly. While so engaged he did not notice the boy on the platform, but when the car took the switch all right he turned to look for the boy, who had just about that moment jumped off the platform after his hat, which blew off. Immediately afterwards a jolt was felt on the car, and it was found that the younger boy in jumping off had in some way fallen under the car and was run over and killed. The deceased was not on the car longer than half a minute, during all which time the driver's attention was directed to passing the switch.

There was no material conflict of evidence ; the testimony is referred to in detail in the opinion of this court.

The defendant presented, inter alia, this point :—

"8. Under all the evidence the verdict should be for the defendant.

Answer. I refuse the point."

The judge submitted to the jury the question of negligence by the driver, and that of contributory negligence by the par-

[Hestonville, &c. R. R. Co. *v.* Kelley.]

ents of the boy in permitting him to run in the street; with the instructions that if they found that the boy jumped on the car without the invitation or permission of the driver, and almost immediately jumped off again, before sufficient time elapsed to raise a presumption that the driver, knowing he was riding there, permitted him to do so, he was a trespasser, and the defendants were not liable; but if the jury should find that the boy was riding there with the knowledge and consent of the driver then he was a passenger—and the consent of the driver may be inferred from his permitting the boy to ride there, if he knew he was there, and if the boy rode there long enough fairly to give rise to such an inference; and in such case, if the accident occurred in consequence of that, and if the parents were not guilty of contributory negligence in omitting to exercise proper care and oversight over their child, the verdict should be for the plaintiffs for such reasonable damages as under all the circumstances the jury should think them entitled to.

Verdict for plaintiffs for $2500, and judgment thereon. The defendants took this writ of error, assigning for error, inter alia, the refusal of the court to affirm their eighth point, as above, and the submission of the case to the jury.

*Samuel Gustine Thompson*, for the plaintiffs in error, argued that under the undisputed evidence the boy was a trespasser, and there being no evidence to warrant a finding by the jury that the driver knew of or consented to the boy's presence on the car, it was error to submit to the jury the question of negligence by the driver, or whether the boy was a "passenger:" Hestonville Passenger Railway Co. *v.* Connell, 7 Norris 520; Flower *v.* Penna. R. R. Co., 19 P. F. S. 210; Duff *v.* R. R. Co., 10 Norris 458; Moore *v.* Penna. R. R. Co., 11 W. N. C. 310.

*Frank Wolfe* (*Lewis Stover* with him), for the defendants in error.—The driver, by requesting or consenting to the boys turning the switch, and getting on the platform either to get the switch iron, or cross to the other side for that purpose, rendered the company liable for an accident to the boys or either of them, as to a passenger. The case was therefore not one where it was the province of the court to decide the question of negligence as matter of law, and it was submitted to the jury under proper instructions: Pittsburgh, Allegheny & Manchester R. R. Co. *v.* Caldwell, 24 P. F. S. 423; Drew *v.* Sixth Ave. R. R. Co., 1 Abbott's App. Decisions (N. Y.) 556; Wilton *v.* Middlesex R. R. Co., 107 Mass. 108; Lovett *v.* Salem R. R. Co., 9 Allen (Mass.) 557; Hestonville Railway Co. *v.* Gray, 3 W. N. C. 422; Philada. City R. W. Co. *v.* Hassard, 25 P. F. S. 367.

Mr. Justice Green delivered the opinion of the court, February 12th 1883.

After a very careful consideration of the testimony in this cause we are unable to discover any evidence of negligence on the part of the defendant, productive of the injury in respect of which the suit is brought. The only testimony upon which it is possible to found an allegation of negligence is that of the boy Knight, who was the companion of the deceased at the time of the accident. But that testimony, in our judgment, fails to establish the ingredients necessary to an accusation of negligence against the defendant. It fails to prove that the driver asked or permitted the deceased to get upon the car, or that he knew of his presence there. The boy said, on cross-examination, that he had before testified that the driver addressed him (Knight), saying, "Boy, will you come and turn switch," and he said nothing contradictory of this in his examination in chief. He does not say that either of them was asked to ride on the front platform or to ride on the car at all. He does testify that he jumped on the front platform and that deceased jumped on next after him. He does not say that the driver either spoke to or saw the deceased, or in any other manner had knowledge of his presence. He testifies that he rode about a fourth of a square, jumped off, turned the switch, jumped on again, and then Kelley's hat blew off, and he (Kelley) jumped after it but slipped under the car wheels, which ran over him and killed him. To drive a horse car the length of one fourth of a square would necessarily occupy but a fraction of a minute. A rigid examination of Knight's testimony, which was very brief, developes no consciousness on the driver's part of the presence of Kelley on the platform. In order to learn how that fact was, it is necessary to resort to other testimony. But there is no testimony on that subject in the case, except that of the driver himself. He says, " When I was coming up to the switch I was leaning over the car, the front dasher, looking out for the switch. I was going very slow, when three boys jumped on, on my left hand side, the biggest one of the three ran right behind me, and right up to the switch and turned it, and sang out all right. I straightened up then, and looked around to the other two boys, and they were gone. I went some distance and I felt a jar of one wheel, and heard somebody say that the car had run over a boy." Further on he says, " I did not see the boys until they jumped on car. When the boy jumped on the car, said something. He said he would turn the switch, and I judge I said something. I am not quite sure, but I think I said, ' go ahead.' I did not speak to the other boys ; I hadn't time. They were on about half a minute. After the boy that turned the switch said ' all right,' I straightened up and the boys were gone." He also

said, "I leaned over, not because I saw a couple of boys, but on account of the switch." There is nothing contradictory of this in the testimony of Knight, except as to the number of the boys, which is not material. When the boys jumped on, the driver, who was at his post, was leaning over the dasher looking out for the switch. He was in the strict performance of his duty. When that duty was accomplished he turned to look for the boys and they were gone. He was certainly bound to look out for the switch, and not to desist until he had safely passed it. Had he desisted from the performance of this duty in order to eject the boys and an accident had happened in consequence, he would have justly been chargeable with negligence. While it is true he was bound to put off the boys, regard must be had to the circumstances in which he was placed, at the moment that duty became incumbent upon him. According to the uncontradicted testimony the whole interval of time that the boys were on the car did not exceed thirty seconds. In that space, and with the driver's attention otherwise properly engaged, it is not just or reasonable to hold him guilty of negligence as for a permissive riding upon the front platform. In no other respect is there the slightest ground for a charge of negligence. The car was properly constructed, the boy was not crowded or jolted off, his death was not the result of any act of the defendant or its agent, but it resulted solely from his own voluntary, unauthorized, and unnecessary act of jumping from the car while in motion. While so young a child is not responsible for contributory negligence still there can be no recovery except for negligence on the part of the defendant, and this we fail to find in view of the circumstances attending the occurrence. The case is peculiar, and differs from all that have heretofore been considered by this court. It more nearly resembles the case of Hestonville Pass. R. R. Co. v. Connell, 7 Norr. 520, than any others. There the child was injured in endeavoring to get upon the front platform of the car, but was not seen by the driver, who was engaged on the rear platform at the time. On p. 523, Mr. Justice GORDON says, "The accident here complained of could not have happened but by the direct act of the plaintiff in his sudden and improper attempt to board the car, and this when the car was moving slowly, and when the driver had no reason to anticipate danger to any one, young or old." In Pittsburgh, Allegheny, and Manchester Railway Co. v. Caldwell, 24 P. F. S. 421, the evidence of a continuous permissive riding upon the front platform was clear and undisputed by the driver himself, and the decision of the case was put upon that ground. In Phila. City Pass. Railway Co. v. Hassard, 25 P. F. S. 367, the facts were that the boy, who was about ten years old, was a passenger, and

attempted to get off the rear platform, but did not succeed, owing to the crowded condition of the car, and he then went to the front platform and got off there.    There were several persons on the front platform, and it was testified that the driver was asked by the boy to stop, that the driver slackened up, but did not stop, and it was left to the jury to say whether there was negligence on the part of the company.    This action of the court below was assigned for error and affirmed by this court.    What was said as to the duty of the defendant to prevent children from riding upon, or getting off from, the front platform, was said with reference to the facts of the case, but all that was decided, was, that it was the province of the jury to determine the question of negligence in view of all the circumstances.    The driver was perfectly conscious of the boy's presence on the platform, and of his attempt to get off, and he made no effort to prevent him.    But here, as we have seen, the facts were very different.    Where the sole basis of liability is the omission to perform a certain duty suddenly and unexpectedly arising, we think there ought to be at least a consciousness of the facts which raise the duty on the part of the person who is charged with its performance, and a reasonable opportunity to discharge it.    Upon the whole testimony in this case we think there was no proof of negligence on the part of the defendant, and that the eighth point of the defendant should have been affirmed.                    Judgment reversed.